*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1362**

A. H. Bennett Company,
Respondent,

vs.

Hackbarth Enterprises Corporation, et al.,
Defendants,
Steven R. Hackbarth,
Appellant.

**Filed June 6, 2016
Affirmed
Reyes, Judge**

McLeod County District Court
File No. 43CV09170

Steve C. O'Toole, Eagan, Minnesota (for respondent)

Scott L. Nokes, Glencoe, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Tracy Smith, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

In this appeal from judgment following a bench trial of a distributor's claim to hold the sole shareholder and officer of a corporation personally liable for the corporation's debt under Minn. Stat. § 514.02 (2014), appellants argue that the district

court erred in concluding that they failed to prove by a preponderance of the evidence that all proceeds received by the corporation for the improvement of residential real estate were applied to the cost of labor, skill, material, or machinery furnished for the improvement. We affirm.

## FACTS

The appellants in this case are Hackbarth Enterprises Corporation (HEC), Steven R. Hackbarth (Hackbarth), and Hackbarth's wife, Lynn A. Fricke Hackbarth. From November 13, 2007 through January 11, 2008, HEC was a licensed residential roofing contractor and Hackbarth was its sole shareholder and officer. As an officer, Hackbarth had responsibilities including issuing all checks and paying material distributors and laborers. Respondent A. H. Bennett (Bennett) was a distributor of roofing materials. Bennett regularly sold residential roofing materials to HEC on an "open account."[1]

HEC made payments to Bennett irregularly, and the payments often did not correlate with a particular invoice or group of invoices. HEC did not reference any invoice numbers or job sites on its checks and did not provide instructions on how to apply the payments. Because it did not receive specific instructions, Bennett followed common industry practice and applied HEC's payments to the oldest unpaid invoice on the account.

By 2007, HEC had fallen behind on its payments to Bennett. Bennett received the last payment from HEC by check dated March 10, 2008, and applied it to the oldest

---

[1] A Bennett credit manager testified at trial that "[a]n open account means that [a company has] terms, and it means that they will buy the material, we will invoice it, and they have a period of time to pay us."

invoice at that time, which was dated November 13, 2007. HEC made no additional payments to Bennett after this date. Bennett eventually wrote off HEC's account as bad debt.

In January 2009, Bennett sued appellants, alleging, among other things, theft of proceeds under Minn. Stat. § 514.02, subds. 1, 1a. Bennett moved for partial summary judgment, and on August 4, 2009, the district court granted summary judgment for Bennett against HEC only. The district court concluded that, as a matter of law, HEC is liable to Bennett for $30,071.99 because HEC has yet to pay Bennett for $30,071.99 in materials that it bought on its open account between November 2007 and January 2008.

In March 2015, the district court held a bench trial on the remaining issues. The district court concluded that Hackbarth was personally liable for HEC's debt under Minn. Stat. § 514.02 and entered judgment against him in the amount of $30,071.99 plus costs, fees, and disbursements. This appeal follows.

**D E C I S I O N**

Appellants argue that Hackbarth cannot be held personally liable for HEC's debt under Minn. Stat. § 514.02 because the amount of payments HEC made to material distributors and laborers between November 13, 2007 and January 11, 2008 exceeded the amount of proceeds received by HEC during that same time period. Appellants' argument is misguided.

On appeal from a bench trial, "[w]hen reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard."

3

*Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002)

(alteration in original) (quotations omitted), *review denied* (Minn. June 26, 2002).  Under

Minn. Stat. § 514.02, subds. 1(b), 1a, a shareholder or officer of a corporation may be

held personally liable for the corporation's debt if the shareholder or officer "fails to use

the proceeds of a payment made to [the corporation] for the improvement [of residential

real estate], for the payment for labor, skill, material, and machinery contributed to the

improvement, knowing that the cost of the labor performed, or skill, material, or

machinery furnished remains unpaid."  And Minn. Stat. § 514.02, subd. 3 provides:

> Proof that [the shareholder or officer] failed to pay for labor performed, or skill, material, or machinery furnished within 15 days after receiving notice that the cost of such labor performed, or skill, material, or machinery furnished remains unpaid [is] sufficient to sustain a finding that the proceeds of such payment were used for a purpose other than the payment for labor, skill, material, and machinery for such improvement, knowing that the costs of labor performed, or skill, material, or machinery furnished remains unpaid, unless the [shareholder or officer];
>
> (1) Establishes that all proceeds received from the person making such payment have been applied to the cost of labor, skill, material, or machinery furnished for *the improvement* . . . .

(Emphasis added).  Therefore, Bennett has the initial burden of proving that Hackbarth

failed to pay for the unpaid material within 15 days of receiving notice that the material

remained unpaid.  *See id.*  If this burden is met, the burden then shifts to Hackbarth to

prove that he applied all the proceeds received for the improvement to the cost of labor,

skill, material, or machinery furnished for that same improvement.  *See id.*

Here, the district court concluded that Bennett proved by a preponderance of the evidence that it provided written notice to Hackbarth and HEC that $30,071.99 was unpaid, that Hackbarth and HEC had knowledge of the nonpayment, and that the $30,071.99 remained unpaid for over 15 days. After the burden shifted to Hackbarth, it concluded that Hackbarth failed to meet his burden of proving "that he applied all proceeds received from the real estate projects toward the materials or services furnished for those same projects." Although the district court acknowledged that "[a]n assortment of checks were produced at trial: (1) checks (proceeds) received by Hackbarth from the improvement projects; (2) checks sent by Hackbarth to Bennett; and (3) checks sent by Hackbarth to . . . laborers," it stated that Hackbarth did not produce "any documentation regarding which jobs these laborers worked on, [any] bookkeeping showing where the proceeds went, or some compelling correlation in the proceed amounts brought in, the amounts paid out, and the time between."

The record amply supports the district court's conclusion that Hackbarth failed to prove by a preponderance of the evidence that he applied all proceeds received by HEC from the real estate projects to the cost of labor or material furnished for those same projects. *See id.* The evidence presented at trial establishes that, between November 13, 2007 and January 11, 2008, the amount of payments that HEC made to Bennett and the laborers was more than HEC received in proceeds, but Hackbarth did not establish that the payments made to Bennett and the laborers were for the same projects for which the proceeds were received. In fact, screen shots from Bennett's accounting program that were admitted into evidence show that the payments made to Bennett were applied to

5

invoices dated November 14, 2007 or earlier. Therefore, the record supports the district court's finding that the payments to Bennett were for earlier projects than those for which the proceeds were received. The district court did not abuse its discretion in determining that Hackbarth was personally liable for the HEC debt under Minn. Stat. § 541.02 and entering judgment against him in the amount of $30,071.99 plus costs, fees, and disbursements.

Appellants cite *Duluth Superior Erection, Inc. v. Concrete Restorers, Inc.*, 665 N.W.2d 528 (Minn. App. 2003), to support their argument. They rely on this court's conclusion in *Duluth Superior* that "appellants could have raised an issue of material fact by producing their financial records and by providing for an accounting of the proceeds received." *Id.* at 535. Here, appellants argue that Hackbarth "provided all of the financial records for the court to review, and thus provide[d] an unrefuted roadmap of accounting." We are not persuaded. Although Hackbarth may have provided all of the limited financial records that he had in his possession,[2] he failed to provide an accounting of the proceeds received. There was no evidence that the payments made to Bennett and the laborers correlated in any way to the projects for which the proceeds were received. In fact, the evidence shows payments made to Bennett were irregular and did not correlate with a particular invoice or group of invoices, and the checks written to Bennett

---

[2] Hackbarth stored HEC's records at his home. In 2009, a fire destroyed these records. Therefore, Hackbarth was not able to produce them at trial.

and the laborers did not reference any invoice numbers or job sites.  Therefore, Hackbarth did not provide "an unrefuted roadmap of accounting."

**Affirmed.**